| | | | |
|---|---|---|---|
| | AUSA: | David Cowen | Telephone: (313) 226-9575 |
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: | Miguel Colon (DOL-OIG) | Telephone: (313) 737-7447 |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
   v.

## Karamoh TURNER

Case No.

Case: 2:22−mj−30474
Assigned To : Unassigned
Filed: 10/28/2022
SEALED MATTER (LH)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___June 24, 2020 and January 17, 2021___ in the county of ___Wayne___ in the ___Eastern___ District of ___Michigan___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1028(a) | Aggravated Identity Theft |
| 18 U.S.C. §1341 | Mail Fraud |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Miguel Colon, Department of Labor-OIG
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: ___October 28, 2022___

_____
*Judge's signature*

City and state: ___Detroit, Michigan___

Hon. Anthony P. Patti, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

I, Miguel A. Colon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent of the U.S. Department of Labor, Office of Inspector General, Office of Investigations - Labor Racketeering and Fraud ("DOL-OIG/OI-LRF") and have been since December 2017. I am currently assigned to the Federal Bureau of Investigation ("FBI") Violent Gang Task Force ("VGTF"), where I participate in investigations of street gangs committing various violations of federal law, including weapons and narcotics trafficking, violent crimes, and fraud. Prior to my current assignment, I was assigned to the Homeland Security Investigations' Document and Benefit Fraud Task Force, where I investigated criminal activity including, but not limited to, identity theft, money laundering, visa fraud and other financial fraud. I have conducted numerous investigations involving identity theft, labor, financial and unemployment insurance fraud schemes. In addition to my experience, I have also received significant law enforcement training, including graduating from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center.

2.     As a Special Agent, I have conducted numerous investigations into criminal violations of both Title 29 and Title 18 of the United States Code. During

this time, I have been either the lead agent or supporting agent on several investigations involving criminal schemes targeting the unemployment insurance ("UI") program through the filing of false or fictitious UI claims. Based on my direct personal experience with these cases, I have become familiar with the methods that criminals use to attack and exploit the UI systems as well as the criminals' reliance on the use of email and other internet or online tools and systems to facilitate that fraud.

3.     Probable cause exists that **Karamoh Kumari TURNER** (DOB: XX-XX-2001) has engaged in an unemployment insurance fraud scheme and has committed mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and aggravated identity theft (18 U.S.C. § 1028A). His scheme involved the filing of fraudulent UI claims through the internet, with some of those claims using misappropriated personal identifying information ("PII") of real persons, and the withdrawal of fraudulently obtained UI funds at ATMs in the Eastern District of Michigan, often using UI debit cards that were sent through the mail.

4.     I make this affidavit based upon personal involvement in the subject criminal investigation, including review of: financial, employment, internet service provider, utility and property records; records from relevant state agencies regarding UI claims; law enforcement surveillances; and information and evidence from search warrants in this investigation. I have also been provided with

2

information from other law enforcement agents and officials, including agents and officials from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and various State Workforce Agencies. This affidavit does not contain all the facts developed to date in the underlying investigation and is being submitted for the limited purpose of establishing probable cause to secure a criminal complaint and arrest warrant.

## UNEMPLOYMENT INSURANCE BACKGROUND

5.     The Social Security Act of 1935 initiated the federal and state Unemployment Insurance system. The system provides benefits to individuals who are unemployed for reasons beyond their control. The purpose of the Unemployment Insurance system is twofold: first, to lessen the effects of unemployment through cash payments made directly to laid-off workers, and second, to ensure that life necessities are met on a weekly basis while the worker seeks employment. In the State of Michigan, the Unemployment Insurance system is administered by the Unemployment Insurance Agency ("MUIA"), which is part of the State of Michigan's Department of Labor and Economic Opportunity. In the State of Maryland, the UI system is administered by the Department of Unemployment Insurance ("DUI"). The U.S. Department of Labor funds many Unemployment Insurance Agency administrative costs, including salaries, office expenses, and computer equipment.

6.      State unemployment systems and benefits are joint state and federal enterprises largely financed by taxes on private employers located in that state. In 2020 and 2021, the federal government provided significant supplemental benefits to the states as a result of the COVID-19 pandemic. Beginning in or about March 2020 and continuing through September 4, 2021, the Families First Coronavirus Response Act; Coronavirus Aid, Relief, and Economic Security Act; and the American Rescue Plan Act of 2021 created federal programs that allowed for the significant outlay of federal funds flowing to and through the states to offset the historic need for unemployment benefits by the American workforce, including in the states of Maryland and Michigan (and in the Eastern District of Michigan). Collectively, these benefits are often referred to as Pandemic Unemployment Assistance ("PUA").

7.      Normally (in the absence of fraud), an unemployed worker initiates an Unemployment Insurance claim. This can be accomplished by submitting a claim in person, over the telephone, or via the Internet. Currently, most Unemployment Insurance claims in Michigan and Maryland are filed online via the Internet through the MUIA and DUI websites. When a claimant using an internet protocol ("IP") address registered in Michigan files a claim with an out-of-state UI agency, the servers used to process those claims are located outside the state of Michigan. For example, Maryland UI claim filed from an IP address registered to a

Michigan residence will be processed through a server located outside of the state of Michigan.

8.      To be eligible for Unemployment Insurance benefits, the worker must demonstrate a certain level of earnings in several quarters immediately preceding the application. The amount of benefits that an Unemployment Insurance claimant might be eligible for depends on a variety of factors, including but not limited to the length of his or her previous employment and the amount of wages he or she earned.

9.      The MUIA or DUI will either approve or reject an Unemployment Insurance claim based on the application made by the unemployed worker. If the MUIA or DUI approves an Unemployment Insurance claim, the claimant is required to re-certify the claim via telephone or Internet at various times during the life of the claim. The worker must also certify that he or she is still unemployed and actively seeking work. One way in which unemployment benefits are provided to a claimant is with a debit card, issued by Bank of America ("BOA"), which is mailed to the claimant through the U.S. Postal Service.

10.     Alternatively, a claimant can provide the state Unemployment Insurance Agency with a bank routing number and bank account number so his or her Unemployment Insurance benefits can be transferred via electronic funds transfers ("EFTs") into his or her bank account. These EFTs originate from one or

more accounts maintained by the state Unemployment Insurance Agency at Bank of America, N.A., which is a subsidiary of Bank of America Corporation, a bank holding and financial holding company headquartered in Charlotte, North Carolina. All EFTs of Unemployment Insurance benefits to Michigan or Maryland Unemployment Insurance claimants, whether via a BOA-provided debit card or via a claimant-provided bank account, involve the transmission of electronic signals through one of BOA's two data centers, which are located in Virginia and Colorado, and from those data centers to banks and/or ATMs located, for example, in Michigan. In addition, any other state that disperses Unemployment Insurance benefits using BOA prepaid debit cards, including Maryland, also involve the transmission of electronic signals through the aforementioned BOA data centers. These are interstate wire communications.

## PROBABLE CAUSE

11.     The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and Department of Labor – Office of Inspector General have been investigating criminal activity conducted by members and associates of the Detroit street gang, "1125 Gang." As part of that investigation, I identified 1125 Gang members, associates, and others who appeared to be engaged in unemployment insurance fraud schemes. Through this investigation, I have probable cause to believe that Karamoh **TURNER** engaged in an unemployment insurance fraud scheme that has

defrauded multiple states of hundreds of thousands of federal dollars earmarked for Pandemic Unemployment Assistance.

12.     I identified an IP address, 68.95.161.177 ("IP 177"), responsible for submitting approximately 43 UI claims in 42 unique individuals' names and Social Security Numbers ("SSNs") in 7 different states. I know from my training and my experience in other UI fraud investigations that a large volume of claims from a single IP address with numerous unique individuals' names and SSNs is indicative of fraudulent UI claims. Based on my experience in other UI fraud investigations, the number of UI claims and the number of unique individuals' names and SSNs listed in those claims, all associated with this single IP address, IP 177, constitutes a large volume of claims and unique individuals' names and SSNs, which provides reason to believe the IP address was used to submit, access and/or modify fraudulent UI claims. To date, approximately $171,560 in UI benefits has been disbursed on claims connected to IP 177.

13.     Agents uncovered the 43 claims linked to IP 177 in part through searches of a DOL-OIG database that contains information related to UI applications and benefits paid. A search in that database for claims filed, accessed

or modified using IP 177 indicated that IP 177 is associated with (*i.e.*, the IP address was used to file, access and/modify) UI claims in 7 different states.

Fraud Indicators

14.     Agents reviewed the claimant phone numbers and bank accounts related to the UI claims associated with IP 177. Agents found numerous commonalities among the claims, which are strong indicators of fraud.  For instance, phone number 480-XXX-8235, was used on 7 separate UI claims in the states of Arizona, Nevada and Maryland.  A separate phone number, 313-XXX-1433 was used on 3 separate UI claims in the states of Michigan and Maryland.  Bank accounts were also used multiple times between claims. For instance, Sutton bank account ending X-4167 was used in 3 separate UI claims. A separate Sutton Bank account ending X-1110 was also used in three separate UI claims. As previously stated, the claims were all filed under a single IP address.

15.     Based on my training and my experience with fraud and identity theft schemes targeting state UI agencies, I know that the filing of 43 distinct claims from one IP address, with claims within that population having repeat phone

numbers and repeat bank accounts are strong indicators of an identity theft and unemployment insurance fraud scheme.

UI Fraud Associated with <strong>TURNER</strong>

16.     On April 21, 2020, a Michigan UI claim was filed in the name of Karamoh **TURNER**. The phone number listed on the claim was 313-XXX-1433. The bank account listed by the claimant for the disbursement of UI benefits was Sutton Bank account ending X-1110. Records provided by Sutton Bank, which I have reviewed, revealed that the accountholder for account ending X-1110 was Karamoh **TURNER**.

UI Account in R.C.'s Name

17.     On August 27, 2020, a California UI claim was filed in the name, SSN and D.O.B. of R.C., a real person. The address registered by the claimant for the mailing of a BOA UI debit card was 133XX Village Park Dr #30XX, Southgate, MI.

18.     On or around August 31, 2020, a BOA UI debit card ending in 8656 in R.C.'s name was mailed, via USPS, to 133XX Village Park Dr #30XX, Southgate, MI. Between August 31, 2020 and September 19, 2020, $23,224 was

deposited into the debit account, established by the California EDD, in R.C.'s name.

19.     BOA provided agents with ATM surveillance footage of a withdrawal made from the UI debit account set up R.C.'s name on September 4, 2020. Based on my review of the ATM surveillance images, I have concluded that the individual in the ATM surveillance footage is **TURNER**. The image below shows **TURNER** making the withdrawal on September 9, 2020.



20.     Although the individual displayed in the image above is wearing a mask, facial features and body composition match those of Karamoh **TURNER**. In addition, the arm tattoos visible in the ATM surveillance images match those of **TURNER**. The photo below (left) of **TURNER**, which shows matching arm tattoos visible in the ATM surveillance image, was taken from **TURNER**'s

Instagram account. The photo below (right) of **TURNER**, was taken from a rap

video posted on YouTube featuring various 1125 members.

 

21.     Records provided by BOA regarding transactions associated with the

California UI bank account in R.C.'s name revealed seven different money

transfers totaling $7,000 to a CashApp account listed as "KUMARI." Agents know

"Kumari" to be **TURNER**'s middle name.

22.     Probable cause exists that **TURNER** committed wire fraud, mail

fraud and aggravated identity theft in connection with the fraudulent UI claim filed

in R.C.'s name, and his fraudulent use of a UI debit card in R.C.'s name (that was

sent through the mail) to withdraw fraudulently obtained UI funds at an ATM in

the Eastern District of Michigan.

UI Account in L.G.'s Name

23.     On June 24, 2020, a Maryland UI claim was filed in the name, SSN and D.O.B. of L.G., a real person, using IP 177, the same IP address used by **TURNER** for his Michigan UI claim. The address registered by the claimant for the mailing of a BOA UI debit card was 184XX Sumner, Redford, MI. A law enforcement database search revealed address 184XX Sumner, Redford, MI, is associated with **TURNER**.

24.     On or around January 17, 2021, a BOA UI debit card ending in 7578 in L.G.'s name was mailed, via USPS, to 184XX Sumner, Redford, MI. Between July 30, 2020 and May 18, 2021, $32,470 was deposited into the debit account, established by the Maryland DUI, in L.G.'s name.

25.     BOA provided agents with ATM surveillance footage of a withdrawal made from the UI debit account set up L.G.'s name on March 30, 2021, in the Eastern District of Michigan. Based on my review of the ATM surveillance images, I have concluded that the individual in the ATM surveillance footage is **TURNER**.



26.     The state of Maryland DUI provided agents with claim information regarding L.G.'s UI claim, which I have reviewed. On or around May 25, 2021, the registered claimant bank account for L.G.'s Maryland UI claim changed to a Sutton Bank account ending in X-8637. Records provided by Sutton Bank, which I have reviewed, revealed the accountholder for account ending X-8637 was Karamoh **TURNER**. A review of the transactions listed on Sutton Bank account ending X-8637 revealed 15 separate deposits between May 26, 2021 and July 21, 2021 totaling $5,987.12 from the Maryland Department of Labor in the name of L.G.

27.     On October 18, 2022, I interviewed L.G., who stated s/he was a victim of identity theft. L.G. stated s/he did not file a UI claim in Maryland, had

13

not received any UI benefits, and did not give permission to anyone to file a UI claim on his/her behalf.

28.     Probable cause exists that **TURNER** committed wire fraud, mail fraud and aggravated identity theft in connection with the fraudulent UI claim filed in L.G.'s name, and his fraudulent use of a UI debit card in L.G.'s name (that was sent through the mail) to withdraw fraudulently obtained UI funds at an ATM in the Eastern District of Michigan. The filing of the claim involved an interstate wire transmission as it was filed via the internet with the Maryland DUI, an agency located outside of Michigan. A UI debit card for that fraudulent claim was then mailed, via the U.S.P.S., to an address in the Eastern District of Michigan, which **TURNER** used in the Eastern District of Michigan to withdraw fraudulently obtained UI funds at an ATM, which in turn involved interstate wire transmissions with BOA servers located in Virginia or Colorado.

## **CONCLUSION**

29.     Based on the forgoing, there is probable cause to believe that Karamoh Kumari **TURNER** has committed mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343) and aggravated identity theft (18 U.S.C. § 1028A) in connection with a scheme to defraud the federal/state unemployment insurance programs and obtain unemployment benefits by means of false and fraudulent pretenses and representations.

Respectfully submitted,

Miguel A. Colon
Special Agent
U.S. Department of Labor
Office of Inspector General


Sworn to before me and signed in my presence
and/or by reliable electronic means.


Date:   October 28, 2022

Hon. Anthony P. Patti
United States Magistrate Judge